**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| MATTHEW JONES,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>ABIOMED, INC., MICHAEL R. MINOGUE, PAULA A. JOHNSON, DOROTHY E. PUHY, JEANNINE RIVET, MYRON ROLLE, ERIC ROSE, MARTIN P. SUTTER, PAUL G. THOMAS, and CHRIS VAN GORDER,<br><br>　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Matthew Jones ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE OF THE ACTION**

1.　Plaintiff brings this action against Plaintiff against ABIOMED, Inc. ("ABIOMED" or the "Company") and its corporate directors for violating Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9"), in connection with the proposed acquisition of the Company by Johnson & Johnson ("Johnson & Johnson").[1]

2.　On October 31, 2022, the Company entered into an Agreement and Plan of

---

[1] The proposed acquisition of the Company described herein is referred to as the "Proposed Transaction."

Merger (the "Merger Agreement") with Johnson & Johnson and its subsidiary, Athos Merger Sub, Inc. ("Merger Sub"). The Merger Agreement provides that ABIOMED stockholders will receive (a) $380.00 per share in cash, plus (b) one contingent value right per share ("CVR"), which represents the right to receive contingent payments of up to $35.00 in cash per share upon the achievement of specified milestones, via a tender offer (the "Tender Offer").[2]

3. The Company's corporate directors subsequently authorized the November 15, 2022, filing of the materially incomplete and misleading 14D-9 Solicitation/Recommendation Statement (the "Solicitation Statement") with the SEC. The Solicitation Statement, which recommends that Company stockholders tender their shares in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Solicitation Statement in violation of the Exchange Act.

4. It is imperative that the material information omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the forthcoming Tender Offer deadline, so that they can properly exercise their rights, among other things.[3]

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

---

[2] Merger Sub commenced the Tender Offer on November 15, 2022.

[3] The Tender Offer is currently scheduled to expire at 11:59 p.m., New York time, on December 13, 2022

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, the owner of ABIOMED common stock.

10. Defendant ABIOMED is a Delaware corporation with its principal executive offices located at 22 Cherry Hill Drive, Danvers, Massachusetts 01923. ABIOMED's shares trade on the Nasdaq Global Select Market under the ticker symbol "ABMD." ABIOMED is a provider of medical devices that provide circulatory support and oxygenation. The Company develops, manufactures and markets proprietary products that are designed to enable the heart to rest and recover by improving blood flow and/or performing the pumping function of the heart and provide sufficient oxygenation to those in respiratory failure. The Company's products are used in the cardiac catheterization lab by interventional cardiologists and in the heart surgery suite by cardiac surgeons for patients who need hemodynamic support

prophylactically or emergently before, during or after angioplasty or heart surgery procedures. ABIOMED's strategic focus and driver of its revenue growth is the market penetration of the Company's family of Impella heart pumps.

11. Defendant Michael R. Minogue is and has been President, Chief Executive Officer, Chairman of the Board, and a director of the Company at all times relevant hereto.

12. Defendant Paula A. Johnson is and has been a director of the Company at all times relevant hereto.

13. Defendant Dorothy E. Puhy is and has been a director of the Company at all times relevant hereto.

14. Defendant Jeannine Rivet is and has been a director of the Company at all times relevant hereto.

15. Defendant Myron Rolle is and has been a director of the Company at all times relevant hereto.

16. Defendant Eric Rose is and has been a director of the Company at all times relevant hereto.

17. Defendant Martin P. Sutter is and has been a director of the Company at all times relevant hereto.

18. Defendant Paul G. Thomas is and has been a director of the Company at all times relevant hereto.

19. Defendant Chris Van Gorder is and has been a director of the Company at all times relevant hereto.

20. Defendants identified in paragraphs 11-19 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

21.     On November 1, 2022, Johnson & Johnson and ABIOMED jointly announced in relevant part:

> NEW BRUNSWICK, N.J. & DANVERS, Mass.--(BUSINESS WIRE)-- Johnson & Johnson (NYSE: JNJ), the world's largest, most diversified healthcare products company, and Abiomed (NASDAQ: ABMD), a world leader in breakthrough heart, lung and kidney support technologies, today announced that they have entered into a definitive agreement under which Johnson & Johnson will acquire through a tender offer all outstanding shares of Abiomed, for an upfront payment of $380.00 per share in cash, corresponding to an enterprise value of approximately $16.6 billion which includes cash acquired. Abiomed shareholders will also receive a non-tradeable contingent value right (CVR) entitling the holder to receive up to $35.00 per share in cash if certain commercial and clinical milestones are achieved. The transaction was unanimously approved by both companies' boards of directors.
>
> The transaction broadens Johnson & Johnson MedTech's (JJMT) position as a growing cardiovascular innovator, advancing the standard of care in one of healthcare's largest unmet need disease states: heart failure and recovery. Cardiovascular disease is the number one cause of death.  All forms of cardiovascular disease lead to heart failure, which is a significant cost to health systems due to hospitalizations and extended length of stay.
>
> Abiomed is a leading, first-to-market provider of cardiovascular medical technology with a first-in-kind portfolio for the treatment of coronary artery disease and heart failure, an extensive innovation pipeline of life-saving technologies, and an 18-year track record of profitable growth.  Abiomed operates in one of the fastest growing medtech segments with significant expansion opportunities in indication, geography, and product.
>
> "The addition of Abiomed is an important step in the execution of our strategic priorities and our vision for the new Johnson & Johnson focused on Pharmaceutical and MedTech," said Joaquin Duato, Chief Executive Officer of Johnson & Johnson.  "We have committed to enhancing our position in MedTech by entering high-growth segments. The addition of Abiomed provides a strategic platform to advance breakthrough treatments in cardiovascular disease and helps more patients around the world while driving value for our shareholders."

"Abiomed's skilled workforce and strong relationships with clinicians, along with its innovative cardiovascular portfolio and robust pipeline, complement our MedTech portfolio, global footprint and robust clinical expertise. Together, we have the incredible opportunity to bring lifesaving innovations to more patients around the world," said Ashley McEvoy, Executive Vice President and Worldwide Chairman of MedTech at Johnson & Johnson. "We are committed to investing for growth and look forward to welcoming the talented team and working together to foster our shared patient-first mindset and winning culture of innovation."

"We are pleased to have reached an agreement that reflects the remarkable value Abiomed created with our revolutionary Impella® heart pump platform and promising pipeline," said Michael R. Minogue, Abiomed's Chairman, President and Chief Executive Officer. "This transaction partners us with an organization that shares our patients-first mindset and creates immediate value for our patients, customers, employees and shareholders. It will enable us to leverage Johnson & Johnson's global scale, commercial strength and clinical expertise to accelerate our mission of making heart recovery the global standard of care."

**Benefits of the Transaction**

- **Diversifies and expands JJMT's portfolio with a leadership platform in heart failure and recovery:** Impella® heart pumps – a breakthrough technology with exclusive FDA approvals for patients with severe coronary artery disease requiring high-risk PCI (percutaneous coronary intervention), treatment of AMI (acute myocardial infarction) cardiogenic shock, or right heart failure – will complement JJMT's portfolio, which includes the leading Biosense Webster electrophysiology business, and further accelerate JJMT's shift into high-growth markets.

- **Benefits patients by advancing mission to make heart recovery the global standard of care:** Johnson & Johnson's footprint, leading capabilities in physician education, commercial excellence, and robust clinical expertise will complement Abiomed's capabilities, accelerating access and adoption of these lifesaving technologies to more patients around the world.

- **Expands market opportunity through a robust pipeline of technologies and clinical studies:** This combination broadens Johnson & Johnson's position as a cardiovascular innovator by adding a world-leading portfolio in heart recovery – with innovative R&D programs, exclusive FDA approvals, and multiple randomized controlled trials underway with the aim of achieving Class I clinical guidelines for Impella® – to expand access to patient populations.

- **Accelerates near- and long-term sales and earnings growth:** The proposed transaction will accelerate pro forma MedTech and Johnson & Johnson enterprise revenue growth.  Johnson & Johnson expects the transaction to be slightly dilutive to neutral to adjusted earnings per share in the first year, considering the impact of financing, and then accretive by approximately $0.05 in 2024, and increasingly accretive thereafter.

**Transaction Financing and Path to Completion**

Under the terms of the agreement, a wholly owned subsidiary of Johnson & Johnson (Merger Sub) will commence a tender offer for all outstanding shares of Abiomed, whereby Abiomed stockholders will be offered an upfront payment of $380.00 per share in cash, along with one non-tradeable CVR that entitles them to up to an additional $35.00 per share in cash if certain clinical and commercial milestones are achieved.

The milestones consist of:

- $17.50 per share, payable if net sales for Abiomed products exceeds $3.7 billion during Johnson & Johnson's fiscal second quarter of 2027 through fiscal first quarter of 2028, or if this threshold is not met during this period and is subsequently met during any rolling four quarter period up to the end of Johnson & Johnson's fiscal first quarter of 2029, $8.75 per share;

- $7.50 per share payable upon FDA premarket application approval of the use of Impella® products in STEMI patients without cardiogenic shock by January 1, 2028; and

- $10.00 per share payable upon the first publication of a Class I recommendation for the use of Impella® products in high risk PCI or STEMI with or without cardiogenic shock within four years from their respective clinical endpoint publication dates, but in all cases no later than December 31, 2029.

Johnson & Johnson expects to fund the transaction through a combination of cash on hand and short-term financing.  Johnson & Johnson expects to maintain a strong balance sheet and to continue to support its stated capital allocation priorities of R&D investment, competitive dividends, value-creating acquisitions and strategic share repurchases.

Following the completion of the transaction, Abiomed will operate as a standalone business within Johnson & Johnson MedTech, becoming one of 12 JJMT priority platforms as defined by annual sales of at least $1 billion each. Michael R. Minogue, Abiomed's Chairman, President and Chief Executive

Officer has an established succession plan to sustain a strong future and will assist in the transition. Andrew Greenfield, who has 17 years with Abiomed, most recently serving as Chief Commercial Officer has been appointed President of Abiomed. Michael Bodner will lead the integration under Ashley McEvoy's leadership. Michael is a seasoned Interventional Cardiovascular executive with 15+ years in the industry with Johnson & Johnson and Abbott Vascular, most recently serving as Worldwide President of Johnson & Johnson's global leading Biosense Webster Electrophysiology business.

The transaction is expected to be completed prior to the end of the first quarter of 2023 and is conditioned on the tender of a majority of the outstanding shares of Abiomed's common stock, as well as the receipt of applicable regulatory approvals and other customary closing conditions. Assuming the closing of the tender offer, Johnson & Johnson will acquire any shares of Abiomed not tendered into the tender offer through a merger of Merger Sub with and into Abiomed for the same per share consideration as will be payable in the tender offer. The merger will be effected as soon as practicable after the closing of the tender offer.

**Advisors**

J.P. Morgan Securities LLC is serving as financial advisor to Johnson & Johnson and Cravath, Swaine & Moore LLP is serving as legal advisor.

Goldman Sachs & Co. LLC is serving as financial advisor to Abiomed and Sullivan & Cromwell LLP is serving as legal advisor.

**The Materially Incomplete and Misleading Solicitation Statement**

22.   The Board caused to be filed the materially incomplete and misleading Solicitation Statement with the SEC on November 15, 2022. The Solicitation Statement, which recommends that ABIOMED stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (a) the Company's financial forecasts and the analyses that support the fairness opinion provided by the Company's financial advisor Goldman Sachs & Co. LLC ("Goldman Sachs"); and (b) potential conflicts of interest faced by Goldman Sachs.

*Material Misrepresentations and/or Omissions Concerning the Company's Financial Forecasts and Goldman Sachs' Financial Analysis*

23. The Solicitation Statement fails to disclose material information concerning the financial forecasts for the Company, including their underlying assumptions and any "risk adjustments" made thereto.[4] The Solicitation Statement further fails to disclose the Company's non-risk-adjusted projections.

24. The Solicitation Statement also fails to disclose all line items underlying the Company's forecasts for: (a) Adjusted EBITDA; (b) Adjusted Operating Income; and (c) Unlevered Free Cash Flow. In addition, the CVR Estimates relied upon by Goldman Sachs also remain undisclosed.[5]

25. The Solicitation Statement fails to disclose material information concerning Goldman Sachs' financial analysis.

26. With respect to the *Illustrative Discounted Cash Flow Analysis* performed by Goldman Sachs, the Solicitation Statement fails to disclose: (a) the Company's estimated next twelve months EBITDA used to calculate the Company's terminal values; (b) the Company's terminal values; and (c) the Company's fully diluted shares outstanding.

27. With respect to the *Illustrative Present Value of Future Share Price Analyses* performed by Goldman Sachs, the Solicitation Statement fails to disclose: (a) the estimated net cash of the Company as of March 31 for each of fiscal years 2024, 2025 and 2026; and (b) the

---

[4] *See* Solicitation Statement at 31.

[5] *See id.* at 34 stating that, in connection with rendering its fairness opinion, Goldman Sachs reviewed "estimates as to the timing of achievement of the Milestones (referred to in this section as the 'CVR Estimates')."

Company's fully diluted outstanding shares as of March 31 for each of fiscal years 2024, 2025 and 2026.

28. With respect to the *Selected Precedent Transactions Analysis* performed by Goldman Sachs, the Solicitation Statement fails to disclose the individual financial metrics for each transaction analyzed.

29. With respect to the *Selected Publicly Traded Companies Trading Multiples* analysis performed by Goldman Sachs, the, the Solicitation Statement fails to disclose the individual multiples and financial metrics for each of the companies analyzed.

30. With respect to the *Premiums Paid Analysis* performed by Goldman Sachs, the Solicitation Statement fails to disclose the transactions analyzed and the individual premiums observed for each transaction.

*Material Misrepresentations and/or Omissions Concerning Company Goldman Sachs' Potential Conflicts of Interest*

31. The Solicitation Statement fails to disclose material information concerning potential conflicts of interest faced by Company insiders, the amount of compensation Goldman Sachs expects to receive in connection with acting as a financial advisor to Johnson & Johnson in connection with the pending separation of its consumer health business.[6]

32. The omission of the above-referenced information renders statements in the "Projected Financial Information" and "Opinion of the Company's Financial Advisor" sections of the Recommendation Statement materially incomplete and misleading in contravention of the Exchange Act.

---

[6] *See* Solicitation Statement at 41.

33. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other stockholders of ABIOMED will be unable to make a sufficiently informed decision in connection with the Tender Offer and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(d) of the Exchange Act and SEC Rule 14d-9 Promulgated Thereunder**

34. Plaintiff repeats all previous allegations as if set forth in full.

35. Defendants have caused the Solicitation Statement to be issued with the intention of soliciting ABIOMED stockholders to tender their shares in the Tender Offer.

36. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

37. Section 14(d)(4) of the Exchange Act states:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

38. SEC Rule 14d-9 sets forth, in relevant part:

> Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

39. Item 8 of Schedule 14D-9 requires a company's directors to "[f]urnish such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

40. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the Solicitation Statement false and/or misleading.

41. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

42. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and the other stockholders of ABIOMED, who will be deprived of their right to make an informed decision whether to tender their shares or seek appraisal if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

**Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

43. Plaintiff repeats all previous allegations as if set forth in full.

44. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made,

not misleading . . . in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation." 15 U.S.C. § 78n(e).

45. Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement to ABIOMED stockholders in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading.  Specifically, the Solicitation Statement misrepresented and/or omitted material facts concerning Goldman Sachs' financial analyses, the background of the Proposed Transaction, and Goldman Sachs' and Company insiders' potential conflicts of interest.

46. Defendants knew that Plaintiff would rely upon their statements in the Solicitation Statement in determining whether to tender his shares pursuant to the Tender Offer or seek appraisal.

47. As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares or seek appraisal.

## COUNT III

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

48. Plaintiff repeats all previous allegations as if set forth in full.

49. The Individual Defendants acted as controlling persons of ABIOMED within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions

13

as officers and/or directors of ABIOMED, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

50.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Solicitation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Solicitation Statement.

52.     In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Solicitation Statement purports to describe the various issues and information that they reviewed and considered – descriptions into which the Company directors had input.

53. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e), Section 14(d) and SEC Rule 14d-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, ABIOMED stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of the Company, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Company stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and

proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  November 18, 2022 **LONG LAW, LLC**

By: */s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@LongLawDE.com

*Attorneys for Plaintiff*